# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KIM CURRY, | ) | FILED: FEBRUARY 13, 2009 |
| | ) | 09CV938 |
| Plaintiff, | ) No. | JUDGE ST. EVE |
| | ) | MAGISTRATE JUDGE MASON |
| vs. | ) | Judge AO |
| | ) | Magistrate Judge |
| CITY OF CHICAGO, | ) | |
| Chicago Police Officers | ) | |
| J.L. MOORE, Star 6312, | ) | Jury Demand |
| HARRY STRONG, Star 20366, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the common law and statutes of the State of Illinois.

2.      Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

### Parties

4.      Plaintiff is a resident of Chicago, Illinois.

5.      Defendant-Officers J.L. MOORE and HARRY STRONG are duly appointed and sworn Chicago police officers. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

6.      The Defendant-Officers are sued in their individual capacities.

7.      Defendant CITY OF CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant-Officers.

## Facts

8.      On or about May 6, 2008, at approximately 11:00 a.m., Plaintiff KIM CURRY was putting clothes in the washing machine in the basement of her house at 8332 South Essex in Chicago.

9.      Her friend, Jajuan Wright, was upstairs with Plaintiff's dog, a German shepherd named Timberland.

10.     At that time, Defendant-Officers J.L. MOORE and HARRY STRONG claim that they were knocking on Plaintiff's front door. Plaintiff was not near the front door at the time.

11.     After putting the clothes in the washing machine, Plaintiff went upstairs and opened the back door to let her dog outside into her fenced-in back yard.

12.     Plaintiff heard a voice say, "Hell no!"

13.     Plaintiff then saw MOORE and STRONG running through her yard. One officer jumped over the chain-link fence; the other officer ran around to the walkway on the side of Plaintiff's house.

14.     Plaintiff's dog started chasing the officer who went to the walkway.

15.     Because MOORE and STRONG were dressed in plain clothes and were not wearing badges, Plaintiff did not know that the two men were police officers.

16.     Plaintiff heard at least six gunshots.

17.     One of the Defendant-Officers approached Plaintiff. Plaintiff noticed that he had blood on his arm.

18.     Plaintiff asked if the officers had shot her dog.

19.     Defendant-Officers didn't reply.

20.     Plaintiff became hysterical, because she thought that the Defendant-Officers had shot her dog.

21.     Plaintiff went to the front door of her home to meet her stepfather and sister, who brought her back in the house.

22.     Plaintiff's stepfather told the Defendant-Officers to call a sergeant to discuss the incident with Plaintiff's dog.

23.     Thereafter, a sergeant arrived at Plaintiff's house.

24.     The sergeant asked Plaintiff if she had hit either of the Defendant-Officers.

25.     Plaintiff told the sergeant that she did not hit any one and that the Defendant-Officers had just shot her dog.

26.     Plaintiff went back into her home and was followed by the Defendant-Officers and sergeant.

27.     The sergeant and a Defendant-Officer grabbed Plaintiff by her arm and twisted it behind her back.

28.     Plaintiff told them that they were hurting her.

29.     Defendant-Officers handcuffed Plaintiff.

30.     Plaintiff was seized and was not free to leave.

31.     Defendant-Officers walked Plaintiff through her home.

32.     Defendant-Officers took Plaintiff outside.

33.     Two female officers arrived.

34.     The female officers had an arrest warrant. They asked Plaintiff's stepfather if he knew the identity or whereabouts of the person whose name was on the warrant. Plaintiff's stepfather recognized the name on the warrant as Plaintiff's cousin, Breon Meeks, who did not live at Plaintiff's residence.

35.     A few days prior, Chicago police officers had gone to Plaintiff's mother's house with the arrest warrant for Plaintiff's cousin, as she had missed a court date. This was the only information Plaintiff had that her cousin was sought by the police.

36.     After she was placed under arrest, Defendant-Officers transported Plaintiff to the police station on 103rd Street.

37.     From the station, Plaintiff was taken in a squadrol to another station at 111th Street, where she remained for approximately two hours.

38.     Plaintiff was charged with battery. The case was docketed in the Cook County Circuit Court as: <u>People v. Kim Curry</u>, 08-218243.

39.     The charges were false.

40.     While at 103rd Street station, the sergeant and Defendant-Officer STRONG repeatedly apologized to Plaintiff for shooting her dog.

41.     The sergeant also told Plaintiff that if he had been there at the time, her dog would not have been shot. He also told Plaintiff that STRONG claimed that the dog had grabbed him by the knee and he was forced to defend himself.

42.     Plaintiff did not observe any injury to STRONG's leg or damage to his jeans.

43.     Plaintiff told the officers that her dog was not trying to attack them, but that he had just been frightened by the presence of strangers in his backyard, and that this was not reason enough to shoot and kill him.

44.     The sergeant offered to get Plaintiff another puppy. Plaintiff declined this offer.

45.     While at the station, Plaintiff's daughter Nikia, who is a cadet in the Chicago Police Department's academy, came to the station and asked why her mother was arrested.

46.     The sergeant told Plaintiff that her daughter was at the station requesting to speak to a commander and that he could get her kicked out of the program if she continued to request to speak to his commander.

47.     Defendant-Officers told Plaintiff that they would have Animal Control come to her house to pick up the body of her deceased dog.

48.     Plaintiff wanted to bury Timberland in her yard herself, but she was being held at the station and could not get home to bury him.

49.     Plaintiff wanted to make sure that the dog's body was removed before her son came home from school and found him.

50.     Plaintiff's son, however, came home from school and found the dead dog. This caused her son, who is epileptic, to have a seizure.

51.     The body of Plaintiff's dog was lying in the yard from 11:00 a.m. until 5:00 p.m., when it was taken away by Animal Control.

52.     On May 8, 2008, Plaintiff and her son's friend Jajuan Wright, who witnessed the incident, each made a complaint with the Independent Police Review Authority. The complaint was assigned Log Number 1016313.

53.     Plaintiff received treatment at South Shore Hospital for the injuries the Defendant-Officers caused when they twisted her arms and placed her in handcuffs.

54.     Plaintiff was diagnosed with swelling and a contusion to her arm.

55.     Plaintiff's battery case was dismissed on June 19, 2008, as Defendant-Officer STRONG did not appear in court.

56.     Each individual Defendant-Officer acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

57.     As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages including loss of physical liberty, physical pain and suffering, emotional distress, pecuniary damages including medical expenses, and the loss of her dog.

**COUNT I**
**(42 U.S.C. § 1983 – Unreasonable Seizure)**

58.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

59.     Defendant-Officers seized Plaintiff.

60.     Defendant-Officers did not have a reasonable suspicion, based on specific and articulable facts, that Plaintiff was about to commit a crime or had committed a crime.

61.     The seizure of Plaintiff without reasonable suspicion or any other legal justification violated her Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award attorneys' fees and costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

**COUNT II**
**(42 U.S.C. § 1983 – False Arrest/Imprisonment)**

62.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

63.     Defendant-Officers placed Plaintiff under arrest.

64.     Defendant-Officers did not have an arrest warrant, probable cause, reasonable suspicion, or any other lawful basis to arrest or detain Plaintiff.

65.     The arrest of Plaintiff without any legal justification or probable cause violated her Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from unreasonable seizures.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award attorneys' fees and costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT III
### (42 U.S.C. § 1983 – Excessive Force)

66.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

67.     Defendant-Officers violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award attorneys' fees and costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT IV
### (42 U.S.C. § 1983 – Failure to Intervene)

68.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

69.     While Plaintiff was subjected to excessive force as described above, Defendant-Officers had an opportunity to intervene, but chose not to intervene.

70.     Defendant-Officers were deliberately indifferent to Plaintiff's right to be free from excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award attorneys' fees and costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT V
### (42 U.S.C. § 1983 – Unreasonable Seizure of Property)

71.     Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

72.     Defendant-Officers seized and killed Plaintiff's dog without legal justification.

73.     Defendant-Officers violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the unreasonable seizure of her property.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award attorneys' fees and costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT VI
### (State Law Claim for Battery)

74.      Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

75.      Defendant-Officers breached that duty.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT VII
### (State Law Claim for False Arrest)

76.      Plaintiff realleges paragraphs 1 through 57 as if fully set forth herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a)      Enter judgment against Defendant-Officers,

b)      Award Plaintiff compensatory and punitive damages,

c)      Award costs, and

d)      Award any further relief that this Honorable Court deems just and equitable.

## COUNT VIII
### (State Law *Respondeat Superior* Claim)

77.      The acts of the Defendant-Officers described in the state law claims specified above were willful and wanton, and committed in the scope of employment.

78.      Pursuant to *respondeat superior*, Defendant CITY OF CHICAGO is liable for its agents' actions.

7

WHEREFORE, Plaintiff demands judgment against Defendant CITY OF CHICAGO, and such other and additional relief that this Honorable Court deems just and equitable.

## COUNT IX
**(Indemnification Claim pursuant to 745 ILCS 10/9-102)**

79.     The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

80.     Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant CITY OF CHICAGO is liable for any judgments in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

**Jury Trial Demanded**

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for the Plaintiff*

Lawrence V. Jackowiak
Daniel P. Kiss
Louis J. Meyer
Adele D. Nicholas
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595